UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

JOSE EMMANUEL GARCIA DELGADO,                                          Petitioner,

v.                                                          Civil Action No. 4:26-cv-21-DJH

SAMUEL OLSON, Field Office Director,
Chicago Field Office, Immigration and
Customs Enforcement et al.,                                           Respondents.

\* \* \* \* \*

**MEMORANDUM AND ORDER**

Jose Emmanuel Garcia Delgado, a noncitizen resident of Illinois currently detained in the Western District of Kentucky, seeks a writ of habeas corpus pending removal proceedings. He alleges that his detention by immigration authorities violates the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment. (Docket No. 1) The Court granted the parties' joint motion to forgo a show-cause hearing given the absence of a material factual dispute (D.N. 10), and the parties have submitted briefs setting out their respective legal arguments (D.N. 7; D.N. 11). After careful consideration, the Court will grant Delgado's petition for the reasons explained below.

I.

Delgado is a twenty-five-year-old native and citizen of Mexico. (D.N. 1, PageID.6 ¶ 23; D.N. 7-1, PageID.57) His parents brought him to the United States in 2002; he entered without inspection. (*See* D.N. 1, PageID.6 ¶ 23; *see id.*, PageID.2 ¶ 2) Delgado has lived in the United States since then and resided in Chicago, Illinois, prior to his detention. (*Id.*, PageID.6 ¶ 23) He "has extensive family residing in the United States" and states that he "has been an exemplary figure in his home community." (*Id.* ¶¶ 24, 26) Prior to his arrest by immigration officials,

Delgado "ha[d] never been arrested for any offense." (*Id.* ¶ 25) Delgado has epilepsy and requires daily medication to prevent seizures. (*Id.*, PageID.2 ¶ 3) On October 29, 2025, a Department of Homeland Security border patrol agent arrested Delgado in Chicago, Illinois. (*See* D.N. 1-1, PageID.26) According to an administrative report, the agent observed Delgado "walking on the sidewalk" and approached him because he "appeared to be avoiding eye contact." (*Id.*) After the agent "asked [Delgado] what country he was a citizen of," Delgado "responded, in a nervous manner, 'here.'" (*Id.*) Delgado then "turned away from [the agent] and attempted to flee on foot." (*Id.*) Delgado was arrested without a warrant after the agent "determined that [he] was likely to escape before a warrant could be obtained for his arrest." (*Id.*)

Delgado was placed in removal proceedings via a Notice to Appear, which charged him as "an alien present in the United States who has not been admitted or paroled." (D.N. 7-1, PageID.57) On January 15, 2026, the day after Delgado filed his habeas petition, an immigration judge granted his request for release on bond and set bond at $5,000.[1] (D.N. 7-2, PageID.61) The Department of Homeland Security appealed the immigration judge's decision, triggering an automatic stay pursuant to 8 C.F.R. § 1003.19(i)(2). (*Id.*; *see* 8 C.F.R. § 1003.19(i)(2)) Delgado is detained at the Hopkins County Jail. (D.N. 1, PageID.2 ¶ 1) He states that he is "only receiving half of the prescribed dosage" for his epilepsy, which "puts him at a high risk of seizures," and that he is "currently suffering from severe headaches and frequent panic attacks." (*Id.* ¶ 3) In his response, Respondent Mike Lewis, the Hopkins County Jailer, states that Hopkins County Jail

---

[1] For individuals arrested under § 1226(a), an immigration officer makes an initial custody determination; the noncitizen may then request a custody redetermination (via a bond hearing) before an immigration judge. *Alonso v. Tindall*, No. 3:25-cv-652-DJH, 2025 WL 3083920, at *5 (W.D. Ky. Nov. 4, 2025) (citations omitted), *appeal docketed*, No. 25-6167 (6th Cir. Dec. 29, 2025). "Bond may be denied only if the government either (1) proves by clear and convincing evidence that the noncitizen poses a danger to the community or (2) proves by a preponderance of the evidence that the noncitizen poses a flight risk." *Id.* (citation modified).

2

"third-party medical providers have reviewed [Delgado's] medications and advise that medications are within therapeutic levels." (D.N. 9, PageID.134 ¶ 2) Delgado "has not had any reported seizures during his detention." (*Id.*)

Delgado seeks a writ of habeas corpus against Lewis, Chicago U.S. Immigration and Customs Enforcement (ICE) Field Office Director Samuel Olson, Department of Homeland Security Secretary Kristi Noem, U.S. Attorney General Pamela Bondi, and Acting Director of ICE Todd Lyons. (*See* D.N. 1, PageID.5–6 ¶¶ 18–22) Delgado alleges that his detention violates the Immigration and Nationality Act, 8 U.S.C. §§ 1225–1226; due process under the Fifth Amendment; and a class-action judgment from the Central District of California. (*See id.*, PageID.21–22 ¶¶ 79–86; *see also id.*, PageID.17 ¶¶ 62–63) Delgado asks the Court to order his immediate release or, in the alternative, release upon the posting of bond set by the immigration judge. (*See id.*, PageID.22; D.N. 11, PageID.149) Respondents argue that (1) the Court lacks jurisdiction to hear the habeas petition under 8 U.S.C. § 1252(b)(9) in light of a recent decision issued by the Third Circuit Court of Appeals; (2) Delgado is properly detained under § 1225(b)(2) as an applicant for admission who is seeking admission; (3) the class-action judgment from the Central District of California is "neither binding nor applicable" to Delgado's petition; (4) Respondents' "reading of Section 1225(b)(2) does not render Section 1226(c) superfluous"; and (5) Delgado's detention does not violate due process because he "was afforded all the process he was due" under § 1225.[2] (*See* D.N. 7, PageID.44–55; D.N. 7-4, PageID.96, 98)

---

[2] Respondents do not argue whether Delgado must exhaust his administrative remedies. (D.N. 7-4, PageID.94 n.4) Therefore, the Court will not address this issue.

## II.

**A.    Jurisdiction**

Citing 8 U.S.C. § 1252(b)(9), Respondents contend that the Court lacks jurisdiction to hear Delgado's claims. (*See* D.N. 7, PageID.44–47) Section 1252(b) states that

> [w]ith respect to review of an order of removal . . . the following requirements apply:
>
> . . . .
>
> (9) Consolidation of questions for judicial review
> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision . . . , to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9). The Court has previously observed that § 1252(b)(9) does not bar jurisdiction under these circumstances. *See Singh v. Lewis*, No. 4:25-cv-133-DJH, 2025 WL 3298080, at *4 (W.D. Ky. Nov. 26, 2025) ("[Section] 1252(b)(9) applies only '[w]ith respect to review of an order of removal.'" (second alteration in original) (quoting 8 U.S.C. § 1252(b))); *see also Martinez-Elvir v. Olson*, No. 3:25-CV-589-CHB, 2025 WL 3006772, at *3 (W.D. Ky. Oct. 27, 2025) (finding that the court had jurisdiction to review a habeas petition challenging "the statutory and constitutional validity of [the petitioner's] continued detention after his bond hearing" where the petitioner "[did] not directly challenge his removal proceedings").

Respondents rely on a recent decision by the Third Circuit Court of Appeals, *Khalil v. President, United States of America*, Nos. 25-2162 & 25-2357, 2026 WL 111933 (3d Cir. Jan. 15, 2026) (per curiam). (*See* D.N. 7, PageID.44) Based on that decision, Respondents argue that "Section 1252(b)(9) bars [the Court] from answering" the question of which statute authorizes Delgado's detention "because it can be raised in a petition for review before a circuit court." (*Id.*,

4

PageID.45–46 (citing 8 U.S.C. § 1252(a)(2)(D)))  In *Khalil*, the petitioner was a lawful permanent resident and an "outspoken advocate for Palestinian human rights." 2026 WL 111933 at *1. The Secretary of State determined that Khalil was removable from the United States pursuant to a provision of the Immigration and Nationality Act allowing removal of noncitizens whose "presence or activities in the United States . . . would have potentially serious adverse foreign policy consequences for the United States." *Id.* at *2 (alteration in original) (quoting 8 U.S.C. § 1227(a)(4)(C)).  When the government detained Khalil and served him with a Notice to Appear, he sought habeas relief in federal court, challenging his detention, removal, and "a broad array of alleged governmental misconduct under the First and Fifth Amendments," the Administrative Procedure Act, and Supreme Court precedent.  *Id.* at *10; *see id.* at *2.  The Third Circuit held that § 1252(b)(9) stripped the district court of jurisdiction over Khalil's petition, finding that Khalil's claims were not "wholly collateral to the removal process" but rather "inextricably linked to it" for purposes of § 1252(b)(9).  *Id.* at *9 (internal quotation marks and citation omitted); *see id.* at *9–10.  The panel thus reasoned that the claims could be raised later in a petition for review of a final order of removal.  *See id.* at *10 ("[A]ddressing any of [Khalil's] claims would require deciding whether removing [him] would be unlawful—the very issue decided through the [petition-for-review] process.").

Here, Delgado challenges his continued detention on statutory and constitutional grounds. (*See* D.N. 1, PageID.21–22 ¶¶ 79–86)  Delgado's claims are thus not "inextricably linked" to his removal proceedings.  *Khalil*, 2026 WL 111933, at *9.  Unlike the petitioner in *Khalil*, he is not challenging "whether removing [him] would be unlawful." *Id.* at *10.  Nor is Delgado "asking for review of an order of removal," "challenging the decision to detain [him] in the first place or to seek removal," or "challenging any part of the process by which [his] removability will be

5

determined." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018).  Thus, § 1252(b)(9) "does not present a jurisdictional bar." *Id.* at 295.

**B.      Immigration and Nationality Act**

Delgado asserts that 8 U.S.C. § 1225(b)(2) "does not apply to those [like him] who previously entered the [United States] and have been residing in the United States prior to being detained and placed in removal proceedings."  (D.N. 1, PageID.21 ¶ 80)  He maintains that § 1226(a) applies instead.  (*See id.*)  Respondents argue that § 1225(b)(2) governs Delgado's detention, incorporating by reference arguments from the appellants' brief in *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771 (E.D. Mich. 2025), *appeal docketed*, No. 25-1965 (6th Cir. Oct. 27, 2025).  (*See generally* D.N. 7-4)

Respondents' arguments are nearly identical to those made in *Alonso*.  The Court thus summarizes and incorporates by reference its reasoning and determination from that decision. There, the Court found that the petitioner was an applicant for admission as an "alien present in the United States who ha[d] not been admitted," 2025 WL 3083920 at *5 (quoting § 1225(a)(1)), but that he was not "seeking admission" because he had resided in the United States for an extended period.  *See id.* at *5, *7.  Likewise, Delgado is an applicant for admission because he is an "alien present in the United States who has not been admitted," § 1225(a)(1) (*see* D.N. 7-1, PageID.57), but he is not "seeking admission" under § 1225(b)(2)(A) because he has lived in the United States for more than twenty years.  *See Alonso*, 2025 WL 3083920, at *6 ("The phrase 'seeking admission,' though not defined in the statute, 'implies action—something that is currently occurring, and in this instance, would most logically occur at the border upon inspection.'" (quoting *Lopez-Campos*, 797 F. Supp. 3d at 781)); *Hyppolite v. Noem*, No. 25-CV-4304 (NRM), 2025 WL 2829511, at *9 (E.D.N.Y. Oct. 6, 2025) ("[T]he category of applicants for admission

6

covered by § 1225(b)(2) who are 'seeking admission' is meant to refer to those who are presenting themselves at the border, or who were recently apprehended just after entering."). This Court and others have consistently found § 1225(b)(2) inapplicable to petitioners like Delgado who resided in the United States for extended periods before their arrests. *See, e.g.*, *Alonso*, 2025 WL 3083920, at *1 (approximately twelve years); *Amaya v. Raycraft*, No. 25-13539, 2025 WL 3530273, at *1 (E.D. Mich. Dec. 9, 2025) (eighteen years); *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *5 (E.D. Mich. Sep. 9, 2025) (twenty years).

Respondents additionally argue that their position "does not render Section 1226(c) superfluous." (D.N. 7-4, PageID.114) They claim that "[a]lthough Section 1226(c) and Section 1225(b)(2) overlap for some aliens, each provision has independent effect." (*Id.*, PageID.113) As the Court explained in *Alonso*, the recent amendment to § 1226, codified in § 1226(c)(1)(E), "applies to noncitizens who are inadmissible under 8 U.S.C. § 1182(a)(6)(A) and who have been charged with, arrested for, or convicted of 'burglary, theft, larceny, shoplifting, or assault of a law enforcement officer . . . , or any crime that results in death or serious bodily injury to another person.'" 2025 WL 3083920 at *6 (quoting § 1226(c)(1)(E)(ii)). "Considering that § 1182(a)(6)(A)(i) specifically refers to aliens 'present in the United States without being admitted or paroled,' and that § 1226(c)(1)(E) requires detention without bond of these individuals if they have also committed a felony, the recently created statutory exception would be redundant if § 1225(b)(2) authorized their detention as well." *Pizarro Reyes*, 2025 WL 2609425, at *5 (citation omitted). Thus, despite overlap between § 1225(b) and § 1226(c) regarding noncitizens who have not been admitted or paroled, Respondents' reading of § 1225 would render § 1226(c) superfluous. *See id.* ("[B]ecause an alien present in the United States without admittance would be unlikely to prove that they are 'clearly and beyond a doubt entitled to be admitted [under § 1225(b)(2)(A)],'

7

ICE would never need to rely on § 1226(c)(1)(E) to detain them." (citations omitted)); *Hurtado v. Jamison*, No. 25-6717, 2025 WL 3678432, at *5 (E.D. Pa. Dec. 18, 2025) ("[T]hese recent amendments drive home the conclusion that Congress never intended § 1225(b)(2)(A) to apply to noncitizens who have been permitted to come into [the United States], on parole or otherwise, and have been residing in this country for years.").

Respondents also maintain that their position is supported by the Supreme Court's opinion in *Jennings*. (*See* D.N. 7-4, PageID.120–22) *Jennings* considered whether §§ 1225(b), 1226(a), and 1226(c) require providing periodic bond hearings to noncitizens detained under those provisions. *See* 583 U.S. at 286, 291. As Respondents note, "the Supreme Court [in *Jennings*] did not rule on whether non-admitted or inadmissible aliens fell within Section 1226(a) as opposed to Section 1225(b)(2)(A)." (D.N. 7-4, PageID.122) Whether Respondents' position is consistent with *Jennings* is thus not dispositive here. In any event, *Jennings* stated that "§ 1226 applies to aliens already present in the United States[, and §] 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings." 583 U.S. at 303. The opinion also described § 1225(b)(1) and (b)(2) as "authoriz[ing] the [g]overnment to detain certain aliens *seeking admission* into the [United States]." *Id.* at 289 (emphasis added). Thus, the Court's reading of the relevant statutes is consistent with *Jennings*.

In accordance with its prior decisions addressing the same issue, the Court concludes that Delgado is detained under § 1226(a), not § 1225(b)(2). *See Singh*, 2025 WL 3298080, at *5; *Lopez v. Olson*, No. 3:25-cv-654-DJH, 2025 WL 3217036, at *3 (W.D. Ky. Nov. 18, 2025), *appeal docketed*, No. 26-5047 (6th Cir. Jan. 20, 2026); *Alonso*, 2025 WL 3083920, at *8.

C.  **Class-Action Judgment**

Delgado asserts that the Court should grant his petition because he is a member of a class certified in the Central District of California that "must be considered for bond release." (D.N. 1, PageID.17 ¶ 62; *see* D.N. 11, PageID.148) Respondents argue that the class action is neither applicable nor binding here on several grounds. (*See* D.N. 7, PageID.48–55)

Recently, final judgment was entered for a class defined as

> [a]ll noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.

*Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3713982, at *1 (C.D. Cal. Dec. 18, 2025), *appeal filed*, No. 25-7958 (9th Cir. Dec. 19, 2025). The final judgment "(1) declared that the Department of Homeland Security['s] . . . new policy of deeming noncitizens arrested in the United States and charged with being inadmissible as 'applicant[s] for admission' subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) conflicted with the text of the Immigration [and] Nationality Act . . . and (2) vacated that policy under the Administrative Procedure Act." *Falcon v. Wofford*, No. 1:26-cv-00181-WBS-EFB, 2026 WL 171927, at *1 (E.D. Cal. Jan. 22, 2026); *see Bautista*, 2025 WL 3713982, at *3–4. Courts in this District have found it "not necessary . . . to adopt the position of the Central District of California" and have instead reviewed habeas petitions "on the[ir] independent merits." *E.g.*, *Rodriguez v. Noem*, No. 4:25-cv-176-RGJ, 2026 WL 116412, at *9 n.8 (W.D. Ky. Jan. 15, 2026); *Meza v. Lewis*, No. 4:25-cv-171-RGJ, 2026 WL 92102, at *10 n.8 (W.D. Ky. Jan. 13, 2026) (same). Accordingly, the Court will "rest[] its decision" on the merits of Delgado's petition. *Rodriguez*, 2026 WL 116412, at *9 n.8 (quoting

9

*Santuario v. Bondi*, No. 25-4296 (JRT/JFD), 2025 WL 3469577, at *2 n.4 (D. Minn. Dec. 2, 2025)).

**D.     Due Process**

Delgado asserts that his detention violates due process under the Fifth Amendment. (*See* D.N. 1, PageID.21–22 ¶¶ 82–86)  Respondents argue that "Section 1225(b)(2) does not afford Petitioner the ability to obtain release on bond, and so the Due Process Clause does not either." (D.N. 7-4, PageID.123)   Because Delgado is detained under § 1226(a), not § 1225(b)(2), Respondents' argument as to the due process required by § 1225(b)(2) is futile.  *Singh*, 2025 WL 3298080, at *5.  And because Delgado remains detained pursuant to an automatic stay (*see* D.N. 7-2, PageID.61), the Court "must determine whether [his] continued detention is in violation of" due process.  *Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *6 (W.D. Ky. Sep. 19, 2025); *see Martinez-Elvir*, 2025 WL 3006772, at *11–12 (analyzing due process in light of detention under automatic stay).

The Fifth Amendment's Due Process Clause extends to all persons, including noncitizens, regardless of immigration status and in the context of removal proceedings.  *Plyler v. Doe*, 457 U.S. 202, 210 (1982) (citations omitted); *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) (per curiam) (citation omitted).  To determine whether civil detention violates a petitioner's due process rights, the Court applies the three-part balancing test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Alonso*, 2025 WL 3083920, at *8 (citing *Barrera*, 2025 WL 2690565, at *6).  Under that test, the Court weighs

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Barrera*, 2025 WL 2690565, at *6 (citing *Mathews*, 424 U.S. at 335).

Like the petitioners in *Barrera* and other cases recently before the Court, Delgado "has a significant private interest in not being detained." *Id.*; *see Singh*, 2025 WL 3298080, at *6; *Alonso*, 2025 WL 3083920, at *9. Moreover, "the automatic stay . . . does not have a foreseeable end date, since '[i]f the [Board of Immigration Appeals] does not resolve the appeal within the ninety-day period [pursuant to 8 C.F.R. § 1003.6(c)(5)], ICE can seek a discretionary stay for an additional 30 days,'" *Martinez-Elvir*, 2025 WL 3006772, at *11 (first alteration in original) (quoting *Sampiao v. Hyde*, 799 F. Supp. 3d 14, 31 (D. Mass. 2025), *appeal filed*, No. 25-2104 (1st Cir. Nov. 21, 2025)), and "if the matter is referred to the Attorney General, she can stay the case indefinitely pending its disposition." *Id.* (citing 8 C.F.R. § 1003.6(d)). And the stay is likely to erroneously deprive Delgado of his freedom "because only noncitizens who have already demonstrated [entitlement to] release from detention are subject to the automatic stay." *Barrera*, 2025 WL 2690565, at *6 (emphasis and citations omitted). Finally, the Court "recognizes that the United States does have a strong interest in ensuring noncitizens do not harm their community and that they appear for future immigration proceedings." *Id.* at *7 (citation omitted). But "these precise interests were already addressed by an independent, neutral arbitrator—the [immigration judge] in [Delgado's] case—[who] determined that [he] specifically does not pose these risks." *Martinez-Elvir*, 2025 WL 3006772, at *12; *see Alonso*, 2025 WL 3083920, at *5 (discussing considerations for bond redetermination). Accordingly, "existing statutory and regulatory safeguards adequately serve the governmental interest in promoting public safety." *Günaydın v. Trump*, 784 F. Supp. 3d 1175, 1190 (D. Minn. 2025). Thus, because all three *Mathews* factors weigh in Delgado's favor, the Court concludes that his detention under the automatic stay violates due process. *See Barrera*, 2025 WL 2690565, at *6–7; *Martinez-Elvir*, 2025 WL 3006772, at *13.

11

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) Delgado's petition for a writ of habeas corpus (D.N. 1) is **GRANTED**. Upon the posting of bond, Respondents **SHALL** immediately release Delgado with no other conditions beyond those imposed by the Immigration Judge. Respondents **SHALL** certify compliance with the Court's Order by a filing on the docket no later than **January 29, 2026**.

(2) Upon receipt of the notice of compliance, this matter will be **CLOSED**.

January 28, 2026

David J. Hale, Chief Judge
United States District Court